**CAHOON et al. v. HOPKINS, Collector of Internal Revenue.**

No. 4537.

District Court, N. D. Texas, Dallas Division.

July 3, 1933.

John B. King and Harry C. Weeks, both of Wichita Falls, Tex., for plaintiffs.

Wright Matthews, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C., and Sarah Cory Menezes, Asst. U. S. Atty., of Dallas, Tex., for defendant.

ATWELL, District Judge.

The plaintiff sues for $2,792.66 which she claims was an erroneous assessment growing out of a wrong construction of section 112 of the Revenue Act 1928 (26 USCA § 2112) relating to a recognition of gain or loss.

The facts have been stipulated by the parties, and the court finds them to be as therein set out.

Of the six milling concerns which were controlled by Mr. Kell, the four situated in Texas could not have been legally transferred to General Mills, Incorporated, without a potential violation of the anti-trust laws of the state of Texas, but, as to the two Oklahoma mills there was no such legal impediment.

In order to circumvent the Texas laws, the stock of the four Texas concerns was vested in what it seems were legal trustees for the transaction of the desired reorganization or merger within the terms of the Revenue Act.

It seems that the word "reorganization" includes a merger. This transaction was concluded on January 2, 1929, which ripened an anterior agreement, which is exhibited in its entirety. There was born, probably, at the same time of the thought for this merger, or consolidation, a trade to sell certain of the stock in the reorganized or buying corporation, to wit, General Mills, Incorporated, to some New York purchasers.

In April, 1929, the New York purchasers took the stock in the new corporation, so contracted for, and the plaintiff in this suit received some forty-odd thousand dollars in cash, plus some actual stock certificates in this new or reorganized concern.

Up to this time in April she had not actually received, in her own hands, the certificates in the reorganization. They had been held in trust, as I have already indicated, for her. Such holding, nevertheless, of course, made it her stock. What she owned in the Wichita Mill & Elevator Corporation had cost her $74,000. If this was a legal merger or reorganization, under section 112, where neither gain nor loss can be charged to or advantaged by the taxpayer, then what she received was worth what she gave, and she owed no tax on it. Nor, would she be permitted to deduct from any other tax, that she

might owe the government, any loss that she made by such transaction. That was evidently the purpose of the section.

It is immaterial, I think, under this section, that the taxpayer was required, in order to be lawful in the state in which she lived, to vest her interest, for the moment, in a trustee, or trustees. What she was doing was exchanging her stock in what she had for stock in another concern. That the Oklahoma citizen could make such a transfer without going through the formality of dissolution is no reason why the Oklahoma taxpayer should have an advantage that the Texas taxpayer could not have. Also, of course, the court can see that the impediment of citizenship in a particular community of the Union might at times be expensive.

But it seems to me that the law here was intended to look through whatever form the transaction had to take and deal with the actual soul of what happened.

As, for instance, there might be some difference in the methods prescribed by different states for the transfer of realty, but it would nevertheless be a transfer of realty, whatever the process through which the parties had to go in order to make that arrangement.

So, I think, that is what was done here. There is no attack made upon the method, no suggestion of bad faith, nor anything of that sort; it merely seems to be, under the stipulation, the method that the Texan had to pursue in order to consolidate, and at the same time be lawful, in so far as Texas is concerned.

It is suggested in argument by the representatives of the government that, if they are wrong as to their contention that the collection of the January the 2d transaction was improper, under this section, then the government was entitled to collect from the plaintiff on the April transaction, which, according to the suggestion of the government representatives, would be some six or seven hundred dollars less than that collected on the January transaction.

I have been unable to follow their position. There is no pleading suggesting any relief of that sort. The government has filed a general denial only, but they suggest that under the facts and the stipulations themselves such a tax could be figured on the April transaction.

Since the court is of the opinion that it was a January transaction, it is hardly necessary to speculate as to what amount would have been due by her on something that occurred in April.

I think the plaintiff should prevail, and judgment will be rendered for her for the amount sued for, and the motion made by the plaintiff for judgment will be granted, and the motion made by the defendant for judgment will be denied, to which action of the court the defendant may have an exception.